## MICHAEL GAZO *v.* CITY OF STAMFORD ET AL.
### (SC 16202)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 21, 2000—officially released January 30, 2001

*Brenden P. Leydon*, for the appellant (plaintiff).

*Christopher J. Coxon*, for the appellee (defendant Joseph Pierni, Jr.).

*Opinion*

BORDEN, J. The two principal issues in this appeal[1] are whether: (1) a plaintiff claiming injuries resulting from a slip and fall on icy and snowy property is owed a duty of care by an independent contractor hired by the possessor of the property to maintain the property in a safe condition; and (2) the plaintiff may sue the independent contractor as a third party beneficiary of the contract between the possessor of the land and

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

the independent contractor. The trial court rendered judgment in favor of the independent contractor on both claims. We disagree with the trial court's judgment on the first claim and agree with its disposition of the second claim. Accordingly, we reverse the judgment in part.

The plaintiff, Michael Gazo, brought the underlying action against the defendants, the city of Stamford (Stamford), David Rednick and Chase Manhattan Bank, N.A. (Chase Bank).[2] Chase Bank filed an apportionment complaint against Joseph Pierni, Jr., doing business as Pierni Construction (Pierni). The plaintiff then filed a substitute complaint against the original defendants and against Pierni. Pierni moved: (1) for summary judgment on the apportionment complaint and the negligence count in the plaintiff's substitute complaint; and (2) to strike the breach of contract claim in the plaintiff's substitute complaint. The trial court granted both of Pierni's motions, and rendered judgment accordingly.

The record reveals the following procedural history. The plaintiff allegedly suffered bodily injury when he slipped and fell on an icy and snowy sidewalk in Stamford on January 28, 1994. The plaintiff brought the underlying action against Stamford based on a statutory highway defect claim, and against Rednick and Chase Bank sounding in negligence, absolute public nuisance, and public nuisance arising out of negligence. The plaintiff alleged that Rednick and Chase Bank owed him a duty to keep the sidewalk clear of ice and snow, and that their failure to do so caused his injuries. Chase Bank filed an apportionment complaint against Pierni, and the plaintiff thereafter filed a substitute complaint against both the original defendants and against Pierni.

[2] Rednick was the record owner of the property abutting the sidewalk where the plaintiff fell. Chase Bank was the tenant in possession of the property abutting the sidewalk where the plaintiff fell. Neither Stamford, Rednick nor Chase Bank is a party to this appeal.

In the substitute complaint, the plaintiff alleged: (1) the statutory highway defect claim against Stamford; (2) negligence, absolute public nuisance, and public nuisance arising out of negligence, against Rednick and Chase Bank; and (3) negligence, absolute public nuisance, public nuisance arising out of negligence, and breach of contract, against Pierni. The breach of contract count was based on an allegation that the plaintiff was a third party beneficiary of a contract between Chase Bank and Pierni.

Pierni subsequently moved for summary judgment on (1) the apportionment complaint, and (2) the negligence count in the plaintiff's substitute complaint. The basis of the motion for summary judgment on both the apportionment complaint and on the plaintiff's negligence count in his substitute complaint against Pierni was that Pierni did not owe any duty of care to the plaintiff. Pierni also moved to strike the breach of contract count contained in the plaintiff's substitute complaint. The basis of the motion to strike was that the breach of contract count failed to allege that Pierni intended to assume a direct obligation to the plaintiff so as to render him a third party beneficiary of the contract. The trial court, *Lewis, J.*, granted both the summary judgment motion and the motion to strike, concluding that "[t]he landlord's duty to keep the premises safe cannot be delegated to a contractor obliged to remove snow and ice from the landlord's premises." The trial court, *Karazin, J.*, subsequently rendered judgment on the motion to strike. This appeal followed.

I

We begin by delineating what is not at issue in this appeal. Because Chase Bank did not appeal from the rendering of judgment in favor of Pierni on the apportionment complaint, the propriety of that ruling is not before us. Thus, this appeal stands in the same proce-

dural posture as if the plaintiff had sued both Chase Bank and Pierni for breach of the same duty, namely, to keep Chase Bank's premises reasonably safe. Also not at issue is whether Pierni may be liable to the plaintiff on a theory of premises liability, which requires that the party to be held liable be in control of the property. That is not a basis of the plaintiff's claims.

What is at issue is the question of whether Pierni owes a direct duty of care to the plaintiff based on Pierni's contractual relationship with Chase Bank. In this context, however, not at issue is whether Pierni's alleged duty is the same as that of Chase Bank. Implicit in the plaintiff's claim is that both Chase Bank and Pierni breached the same duty, and in the same way or ways. This is implicit in the plaintiff's allegations of negligence against Pierni,[3] and in the plaintiff's reliance on 2 Restatement (Second), Torts § 324A (1965), which is discussed later in this opinion. Thus, we view the plaintiff's first claim as, in essence, a claim that Pierni, as Chase Bank's contractor, and having contractually assumed Chase Bank's duty of care to the plaintiff, stands in Chase Bank's shoes with respect to liability to the plaintiff.[4]

---

[3] The plaintiff's allegations of negligence against Pierni are that Pierni's "obligation to maintain the sidewalk" free of ice and snow arose pursuant to a contract with Chase Bank, and the plaintiff's specifications of negligence against Pierni are identical to those he makes against Chase Bank.

[4] This point bears some emphasis, because it may well be that, depending on the nature and scope of Pierni's contractual undertaking with Chase Bank, the plaintiff may not be able to establish successfully Pierni's breach of Chase Bank's duty of care to the plaintiff. Thus, for example, at one end of the liability spectrum, if Pierni's contractual undertaking was simply to clear the premises of ice and snow reasonably soon after a snowstorm ended—a typical, albeit not exclusive contractual undertaking of a snow plowing contractor—and the plaintiff's slip and fall resulted from a subsequent thawing and refreezing hours later, presumably Pierni would not be liable to the plaintiff, although Chase Bank might well continue to be liable. At the other end of the spectrum, according to the plaintiff's claim against Pierni, if Pierni's contractual undertaking had been to perform the entirety of Chase Bank's duty to keep its premises safe, then presumably Pierni would be liable in such an instance. There are, of course, numerous points

We begin with the plaintiff's contention that Pierni owed him a duty of care in his performance of ice and snow removal services. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Citations omitted; internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483–84, 717 A.2d 1177 (1998).

We conclude that Pierni owed a direct duty of care to the plaintiff. First, the relationship between Pierni's alleged negligence and the plaintiff's injuries is direct, and well within the scope of foreseeability. Pierni contracted to remove ice and snow from the sidewalk in front of Chase Bank in order for the area to be safe for pedestrians such as the plaintiff. Although the duty owed to the plaintiff cannot extend beyond the scope of foreseeability, "the potential for harm from a fall on ice was significant and foreseeable." *Burns* v. *Board of Education*, 228 Conn. 640, 650, 638 A.2d 1 (1994). It is also reasonable to conclude that an ordinary person in Pierni's position, knowing what he knew or should

---

in between these two extremes. It should be emphasized that Pierni may be held liable to the plaintiff only to the extent that (1) his contractual undertaking permits, and (2) his breach of duty to the plaintiff is part and parcel of Chase Bank's duty to the plaintiff.

have known, would anticipate that severe injuries were likely to result from a slip and fall if the sidewalk was not cleared properly of ice and snow. It is not unreasonable, or beyond the scope of foreseeability, therefore, to hold Pierni accountable for the plaintiff's injuries if they were caused by Pierni's negligent performance of his contract with Chase Bank.

Second, there are valid public policy reasons for holding Pierni responsible for his conduct. Pierni's liability to the plaintiff fits comfortably within the general rule that every person has a duty to use reasonable care not to cause injury to those whom he reasonably could foresee to be injured by his negligent conduct, whether that conduct consists of acts of commission or omission. See, e.g., *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 633, 749 A.2d 630 (2000) ("[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised"); *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982) ("[a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act"). There is no question that Pierni had a duty to Chase Bank under their contract to perform its contractual duties in a reasonable manner so as to prevent injury to persons using the sidewalk. It is not an unreasonable extension of that duty to go beyond Chase Bank to include those members of the public, like the plaintiff, who are injured by the breach of that duty.

In this connection, we note that in some circumstances, we have, for persuasive policy reasons, limited the reach of duties so as to preclude certain foreseeable victims from being able to recover for their breach. For example, "[o]ur common-law cases have shielded

professional decision making from the complaints of third parties when third party intervention carried with it a substantial risk of interference with the primary purpose of the professional consultation." *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 97, 735 A.2d 347 (1999) (psychiatrist's treatment of troubled spouse should not be burdened by accountability to other spouse); see also *Zamstein* v. *Marvasti*, 240 Conn. 549, 561, 692 A.2d 781 (1997) (mental health professionals have no duty to third persons when performing sexual assault abuse evaluations of children); *Fraser* v. *United States*, 236 Conn. 625, 634, 674 A.2d 811, cert. denied, 519 U.S. 872, 117 S. Ct. 188, 136 L. Ed. 2d 126 (1996) (duty to disclose substantial risk of imminent act of violence arises only if third person is identifiable victim or member of class of identifiable victims); *Krawczyk* v. *Stingle*, 208 Conn. 239, 246, 543 A.2d 733 (1988) (no liability to third parties for attorney's negligent delay in execution of estate planning documents). We see no similar persuasive policy reasons in the present case.

Third, § 324A of the Restatement (Second) of Torts recognizes such a duty as a matter of policy.[5] Section 324A provides in relevant part: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to

---

[5] Section 324A of the Restatement (Second) of Torts provides: "Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Only § 324A (b) is involved in this case.

liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . (b) he has undertaken to perform a duty owed by the other to the third person . . . ." We adopt § 324A (b), at least in the circumstances of the present case, in which it is clear that the service was performed for consideration and in a commercial context.[6]

In this case, Pierni contracted to perform ice and snow removal services for Chase Bank, which had a nondelegable duty to keep its premises safe. Ice and snow removal is a type of service that is undertaken in contemplation of protecting third persons, and injuries resulting from a slip and fall are foreseeable. See *Burns* v. *Board of Education*, supra, 228 Conn. 650. Under § 324A (b) of the Restatement (Second) of Torts, Pierni is subject to liability to the plaintiff for his physical injuries if the plaintiff can show that Pierni failed to exercise reasonable care when performing the duty owed by Chase Bank to the plaintiff.

Fourth, we already have adopted an analogous duty in construction cases. See, e.g., *Coburn* v. *Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599 (1977); *Zapata* v. *Burns*, 207 Conn. 496, 542 A.2d 700 (1988). In *Coburn*, a contractor was held liable to a subsequent purchaser of a house in which the contractor had installed a faulty septic system. *Coburn* v. *Lenox Homes, Inc.*, supra, 569. We determined that privity was not a requirement to sustain the plaintiff's tort action. Id., 574. Moreover, we stated that "[i]t is clear that a defectively constructed house is likely to result in damage to the owner and there is no reason why the [contractor] should not be liable for the effects of his negligence if they were

---

[6] We need not, and do not, consider whether the same conclusion should apply when the service is performed without consideration or in a noncommercial context.

foreseeable." Id., 575. *Coburn* was reviewed eleven years later in *Zapata* v. *Burns*, supra, 496. In *Zapata*, we determined that "[a]n architect's liability for negligence resulting in personal injury or death may be based upon his supervisory activities or upon defects in the plans." Id., 517. In addition, we stated: "It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done." (Internal quotation marks omitted.) Id. We see no meaningful distinction between an independent contractor who has created a dangerous condition on the land, such as installing a faulty septic system or negligently supervising a construction project, and an independent contractor who has agreed to perform a service that is essential to keeping foreseeable third parties safe.

Pierni contends that, as a matter of policy, imposing liability as the plaintiff advocates would be too burdensome because independent contractors would be liable to innumerable third parties, thereby creating a disincentive to contractors from doing this kind of business. Although we agree that contractors may be liable to parties whom they could not have necessarily identified specifically when entering into the original contract, they always have had a duty to perform their work in a nonnegligent manner, and our conclusion does no more than to hold contractors liable to those parties foreseeably injured by their negligence. We are not persuaded, therefore, that extending their liability to such parties will drive contractors out of business. A more likely possibility is that it may simply increase the cost of doing business, which presumably contractors may pass on to their customers.

In this connection, Pierni also argues that liability should remain with the party most able to absorb the

financial burden, namely, the property possessor. Commercial contractors, however, are just as capable as property possessors of protecting themselves by purchasing insurance, or making other protective financial arrangements, and spreading the cost among all of their customers. Moreover, commercial contractors have the bargaining power to include in their contracts appropriate indemnity or other clauses.

Pierni also argues that the plaintiff cannot prevail under § 324A of the Restatement (Second) of Torts because he cannot prove that "his failure to exercise reasonable care increase[d] the risk of harm," or that "the harm is suffered because of reliance of the other or the third person upon the undertaking." Thus, Pierni focuses on subsections (a) and (c) of § 324A of the Restatement (Second) of Torts. See footnote 5 of this opinion. Pierni, however, has failed to address why § 324A *(b)* does not provide relief for the plaintiff.

Pierni argues further that the nondelegable duty doctrine precludes the plaintiff from being able to sue an independent contractor for its negligence because the nondelegable duty doctrine means that the property possessor is the *only* party that may be held liable for injuries sustained on the property. We disagree.

We agree with Pierni that the nondelegable duty doctrine means that the party with such a duty—in this case, Chase Bank—may not absolve itself of liability by contracting out the performance of that duty. Both the Appellate Court and courts of other jurisdictions have held that the nondelegable duty doctrine means that a party may contract out the *performance* of a nondelegable duty, but may not contract out his ultimate legal responsibility. See *Ray* v. *Schneider*, 16 Conn. App. 660, 665, 548 A.2d 461, cert. denied, 209 Conn. 822, 551 A.2d 756 (1988) ("an employer may not contract away his liability to the general public for harm

caused in the performance of [a nondelegable duty]"); *U.S. Security Services Corp.* v. *Ramada Inn, Inc.*, 665 So. 2d 268, 270 (Fla. App. 1995) ("a landowner may contract out the performance of his non-delegable duty to an independent contractor, but he cannot contract out of his ultimate legal responsibility for the proper performance of his duty by the independent contractor; the landowner is always responsible for the proper performance of this non-delegable duty"); *Brooks* v. *Hayes*, 133 Wis. 2d 228, 247, 395 N.W.2d 167 (1986) ("[w]hen the court speaks of a nondelegable duty under the independent contractor tort rule, the court means that a party cannot bargain away the risks of performance").

Contrary to Pierni's suggestion, however, it is not a necessary implication of the nondelegable duty doctrine that the contractor to whom the performance of the duty has been assigned may not, under appropriate circumstances, also owe the same duty to a party injured by its breach. Pierni has not cited any cases for this proposition. In addition, both § 324A (b) of the Restatement (Second) of Torts and those cases decided elsewhere; see, e.g., *Petition of Alva S.S. Co., Ltd.*, 616 F.2d 605, 610 (2d Cir. 1980); *U.S. Security Services Corp.* v. *Ramada Inn, Inc.*, supra, 665 So. 2d 270; *Brooks* v. *Hayes*, supra, 133 Wis. 2d 247; suggest otherwise. Moreover, we see no persuasive policy reasons to attach such an implication to the doctrine as a matter of law. Instead, we view the nondelegable duty doctrine as involving a form of vicarious liability, pursuant to which the party with the duty may be vicariously liable for the conduct of its independent contractor. That vicarious liability, however, does not necessarily preclude liability on the part of the independent contractor.

Under the general rule, an employer is not liable for the negligence of its independent contractors. *Douglass* v. *Peck & Lines Co.*, 89 Conn. 622, 627, 95 A. 22 (1915); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 71, p.

509; 41 Am. Jur. 2d, Independent Contractors § 29 (1995). One exception to this general rule, however, is that the owner or occupier of premises owes invitees a nondelegable duty to "exercise ordinary care for the safety of such persons." 41 Am. Jur. 2d, supra, § 46; see also W. Prosser & W. Keeton, supra, § 71, pp. 511–12. The nondelegable duty doctrine is, therefore, an exception to the rule that an employer may not be held liable for the torts of its independent contractors. See, e.g., *Petition of Alva S.S. Co., Ltd.*, supra, 616 F.2d 610 ("[a]n independent contractor remains liable for his own negligence even though the law also imposes liability on the owner under the non-delegable duty rule"); *Chapman* v. *Mutual Service Casualty Ins. Co.*, 35 F. Sup. 2d 699, 706 (1999) (nondelegable duty doctrine is exception to independent contractor rule). Nondelegable duties create a form of vicarious liability. W. Prosser & W. Keeton, supra, § 71, p. 511; *Ray* v. *Schneider*, supra, 16 Conn. App. 664 ("where the employer has a nondelegable duty . . . the employer may be vicariously liable to others for the negligent acts of the independent contractor"). In vicarious liability situations, "the law has . . . broaden[ed] the liability for that fault by imposing it upon an *additional*, albeit innocent, defendant"; (emphasis added) W. Prosser & W. Keeton, supra, § 69, p. 499; namely, the party that has the nondelegable duty.

Thus, the nondelegable duty doctrine simply does not address whether the person to whom the performance of the duty has been delegated—in this case Pierni—may not also be liable. That is a question that must be addressed, as we have, by analyzing it under our established jurisprudence regarding tort duties.

Pierni also contends that "[i]f we accept [the] plaintiff's reasoning in this case, both [Chase Bank] and [Pierni] are jointly liable to the plaintiff for the same failure to maintain the property." We disagree. Our analysis of Pierni's liability to the plaintiff is consistent with

the abolition of joint and several liability by tort reform. General Statutes § 52-572h (c) provides: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section." This provision "replaced the common-law rule of joint and several liability with a system of apportioned liability that holds each defendant liable for only his or her proportionate share of damages." *Nash* v. *Yap*, 247 Conn. 638, 645, 726 A.2d 92 (1999). That provision, however, proceeds on the premise that the defendants, between or among any of whom liability is apportioned, are at least potentially liable in differing proportions. It does not apply, therefore, to a case of vicarious liability of one defendant for the conduct of another. Thus, as Pierni pointed out in oral argument before this court, § 52-572h (c) does not apply, for example, when the two defendants are a servant and his master who is vicariously liable for his servant's tortious conduct. Consequently, in the present case, if Pierni were to be held liable to the plaintiff based on his contractual assumption of Chase Bank's duty of care to the plaintiff, in effect Chase Bank's liability would be tantamount to a form of vicarious liability for Pierni's conduct. In that circumstance, there would be no revival of joint and several liability inconsistent with § 52-572h (c).

## II

The plaintiff next claims that the trial court improperly struck the ninth count of his substitute complaint, in which he had alleged that he was a third party beneficiary of the contract between Chase Bank and Pierni.

Specifically, the plaintiff contends that he pleaded a proper claim for breach of contract as a third party beneficiary because: (1) he alleged that the parties to the contract intended to create a direct benefit to business invitees such as the plaintiff by making the sidewalk where the plaintiff fell safe for pedestrian travel; and (2) intent is a question of fact that should not be disposed of in a motion to strike. Pierni contends, to the contrary, that although the plaintiff was a customer of Chase Bank, and it allegedly was foreseeable that he could be injured by Pierni's negligence, as a matter of law, the plaintiff could not be considered to be a third party beneficiary of the contract. We agree with Pierni.

We first consider a procedural claim made by the plaintiff, namely, that the trial court improperly granted the motion to strike on a ground not raised in the motion. We reject his claim. It is true, as the plaintiff suggests, that the trial court granted both the summary judgment motion and the motion to strike on the common ground of the nondelegable duty doctrine, which was a ground raised only in the summary judgment motion. It is also true, moreover, that the basis for the motion to strike was that the substitute complaint failed to allege sufficiently that Pierni had intended to assume a direct obligation to the plaintiff so as to render him a third party beneficiary of the contract.

We conclude, however, that under these circumstances, it is appropriate for us to consider the propriety of the grounds asserted in the motion to strike. "Although grounds other than those specified should not be considered by the trial court in passing upon a motion to strike . . . where the trial court sustains a motion to strike on erroneous grounds, if another ground is appropriate, the granting of the motion will be upheld by this court. . . . Of course, the alternative ground must have been alleged in the motion to strike in some form." (Citations omitted.) *Morris* v. *Hartford*

*Courant Co.*, 200 Conn. 676, 682, 513 A.2d 66 (1986). In our view, although the ground relied on by the trial court in granting the motion to strike was not asserted in that motion, the ground that was asserted serves as an appropriate basis for the same conclusion, as our subsequent discussion indicates.

We next consider the plaintiff's substantive contention, namely, that he pleaded sufficient facts to survive a motion to strike. "We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [plaintiff's motion] is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996) [cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)]. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . *Amodio* v. *Cunningham*, 182 Conn. 80, 83, 438 A.2d 6 (1980). Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . .

*Edwards* v. *Tardif*, 240 Conn. 610, 620, 692 A.2d 1266 (1997)." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000).

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. In *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386 (1963), we quoted *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 201, 75 A.2d 507 (1950), and reaffirmed that [t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary; *Knapp* v. *New Haven Road Construction Co.*, supra, 326; we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended. Id.; see also *Congress & Daggett, Inc.* v. *Seamless Rubber Co.*, 145 Conn. 318, 324, 142 A.2d 137 (1958); *Pavano* v. *Western National Ins. Co.*, 139 Conn. 645, 648, 96 A.2d 470 (1953); *Colonial Discount Co.* v. *Avon Motors Inc.*, supra, 200; *Byram Lumber & Supply Co.* v. *Page*, 109 Conn. 256, 260, 146 A. 293 (1929).

"The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder.

That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." (Internal quotation marks omitted.) *Grigerik* v. *Sharpe*, 247 Conn. 293, 311–12, 721 A.2d 526 (1998).

We acknowledge that the plaintiff used language that ordinarily would be sufficient to plead a third party beneficiary cause of action. The plaintiff alleged that he was a customer of Chase Bank, that Chase Bank and Pierni "entered into the contract for the express purpose of making the sidewalk . . . to the bank safe for . . . customers of the bank," and that he is "a third party beneficiary of the aforesaid contract in that the parties thereto intended to create a direct benefit to business invitees such as the [p]laintiff . . . ." Nonetheless, despite the specificity of these allegations and the established standard of review thereof, we conclude that, as a matter of law, the plaintiff may not be considered a third party beneficiary of the contract between Chase Bank and Pierni. Put another way, the liability of Pierni to the plaintiff, if any, is based on principles of tort law, and the plaintiff may not convert that liability into one sounding in contract merely by talismanically invoking contract language in his complaint.

Although ordinarily—indeed, in most cases—in reviewing a motion to strike, the court must take the plaintiff's allegations at face value, that rule is not absolute. We have, on occasion, looked beyond the specific language of a pleading to discern its real underlying basis. See, e.g., *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 800, 756 A.2d 237 (2000) ("[the defendant] cannot . . . convert its apportionment claim against

[the third party defendant] into something other than a product liability claim simply by alleging only negligent misconduct"). In our view, this is an appropriate case in which to pierce the pleading veil.

Thus, in the present case, we look beyond the language used in the complaint to determine what the plaintiff really seeks. Just as "[p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender"; *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982); putting a contract tag on a tort claim will not change its essential character. An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law. "[W]hen the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading." W. Prosser, Torts (3d Ed. 1964) § 94, pp. 642–43. It is clear that the gravamen of the plaintiff's third party beneficiary contract theory is in reality a tort arising out of a contract. "It is true, of course, that out of a contractual relationship a tort liability, as in negligence, may arise." *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 410, 207 A.2d 732 (1965); see also *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980) ("[t]he argument that contract rights . . . may yet give rise to liability in tort . . . is not a novel one"). This is manifest from the fact that the plaintiff's allegations of liability[7] and dam-

---

[7] In count nine of the plaintiff's substitute complaint, paragraph thirteen, the plaintiff alleged that Pierni was liable because: "The Plaintiff's injuries and damages were caused by the negligence or carelessness of the defendant or its agents, servants or employees in one or more of the following respects: (a) In that they caused or allowed, and permitted the sidewalk to be and remain in a dangerous, defective, and unsafe condition; (b) In that they caused or allowed and permitted the sidewalk to be and remain covered with large mounds of old ice and snow, when the same was dangerous to the plaintiff and others; (c) In that they caused, allowed and permitted the sidewalk area to be blocked with an accumulation of ice and snow, when

ages[8] sound, not in contract, but in tort.

The plaintiff is seeking compensation for injuries suffered from a fall on ice and snow, purportedly because of Pierni's negligence. The recovery the plaintiff seeks for his personal injuries is generally understood as tort damages. Although the duty between Pierni and the plaintiff may have arisen because of the contract between Chase Bank and Pierni for snow and ice removal, the plaintiff is not seeking damages for that breach, but rather for Pierni's negligence in the performance of the contract.

In light of these circumstances, it simply would not make sense to permit the plaintiff to recover under a contract theory. "The general rule of damages in a breach of contract action is that the award should place

same was dangerous to the plaintiff and others; (d) In that they caused, maintained or allowed an accumulation of ice and snow to exist on the sidewalk when they knew or in the exercise of reasonable care should have known that this would create a dangerous and hazardous condition to those using said premises, including the plaintiff; (e) [I]n that they failed to remedy or repair said conditions when the same were reasonably necessary under the circumstances; (f) [I]n that they failed to warn the plaintiff of the conditions set forth therein; (g) [I]n that they failed to make a proper and reasonable inspection; (h) [I]n that they maintained said sidewalk in the aforesaid conditions for a period of time; (i) [I]n that they failed to discover and correct or remedy said conditions; (j) [I]n that they failed to place sand or otherwise make . . . the sidewalk safe; and (k) [I]n that they failed to clear a pathway to traverse the sidewalk."

[8] In count nine of the plaintiff's substitute complaint, paragraphs seven through twelve, the plaintiff alleged the following damages: a right leg fracture; blood clots; severe shock to his entire nervous system; severe physical, mental and emotional distress; extreme pain and suffering; depression; lethargy; loss of appetite; nervousness; fear of death; embarrassment; limitation of activities; inconvenience; disability; limitation of motion; the inability to perform household, recreational and normal duties, activities and functions; lost wages; permanent partial destruction of earning capacity; fear of future medical complications; and the expenditure of money, and possible future expenditures, for medical care and treatment, physical therapy, hospitalization, surgical care and treatment, therapeutic care and treatment, pharmaceutical expenses, medical devices, ambulatory care, radiological treatment and diagnostic treatment.

the injured party in the same position as he would have been in had the contract been performed. . . . Damages for breach of contract are to be determined as of the time of the occurrence of the breach." (Citations omitted; internal quotation marks omitted.) *O'Hara* v. *State*, 218 Conn. 628, 642, 590 A.2d 948 (1991).

Putting the plaintiff in as good a position as he would have been in had the contract been performed would not compensate this plaintiff. The usual recovery for breach of a contract is the contract price or the lost profits therefrom. See, e.g., *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 32, 662 A.2d 89 (1995) ("[t]his court has consistently applied the general damage formula of *Hadley* v. *Baxendale* [9 Ex. 341, 354, 156 Eng. Rep. 145 (1854)] to the recovery of lost profits for breach of contract"); *Loda* v. *H. K. Sargeant & Associates, Inc.*, 188 Conn. 69, 82, 448 A.2d 812 (1982) (" '[t]he measure of damages for breach of contract of sale is the difference between the contract price and the value of the property at the time of the breach of the contract' "); *Kunian* v. *Development Corp. of America*, 165 Conn. 300, 315, 334 A.2d 427 (1973) ("its complaint . . . stated an action on the contract and that as a result the measure of damages is the contract price").

The plaintiff does not seek the contract price paid by Chase Bank for the work done by Pierni or any lost profits. Instead, the plaintiff seeks recovery for his physical and mental pain and suffering, lost wages and medical bills resulting from Pierni's negligence. Although contract damages ordinarily consist of consequential losses; see, e.g., General Statutes § 42a-2-715 (2); *Tolland Enterprises* v. *Scan-Code, Inc.*, 239 Conn. 326, 332, 684 A.2d 1150 (1996) ("a breach of the accord by the plaintiff entitled the defendant to specific performance of the accord and any consequential damages"); 3 Restatement (Second), Contracts § 347 (b) (1981); they ordinarily do not encompass such losses as pain

and suffering. It is clear, therefore, that although the plaintiff has cast this claim in contractual language, in essence he seeks a tort recovery.

Furthermore, as the plaintiff candidly admitted in oral argument before this court, the only practical difference between the plaintiff's negligence and contract claims is that different statutes of limitations would apply to the two claims. The law should not permit him to recast what is essentially a tort claim as a contract claim solely to gain the potential advantage of a longer statute of limitations.

Common sense also informs us that the plaintiff's contract claim is in reality his negligence claim cloaked in contract garb. "It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985). Although, as a matter of law, a duty to the plaintiff may be imposed on Pierni, it simply defies common sense and reality to think that, despite the plaintiff's allegation, Chase Bank and Pierni, when they formed their contract, actually intended that every passerby on the sidewalk would be a party to that contract. In sum, where, as in this case, the plaintiff's allegations of both liability and damages sound in tort, and the only practical effect of permitting a contract claim to lie would be to extend the tort statute of limitations, and common sense strongly counsels otherwise, the plaintiff may not be permitted to transform his tort claim into a contract claim merely by alleging that it is such a claim.

Policy considerations also guide our decision. The plaintiff relies on the concepts of foreseeability and business invitee status to substantiate his claim that he was an intended beneficiary of the contract. Our conclusion that the plaintiff has a tort claim of action under § 324A (b) of the Restatement (Second) of Torts

because he was a foreseeable victim cannot be transposed to his contract claim. "[F]oreseeability is a tort concept, and the fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary. To import the concept of foreseeability into the law governing contracts, which is premised on the concept that mutual obligations entered into voluntarily should be enforced, would significantly reduce contracting parties' ability to control, through the negotiated exchange of promises and consideration, the scope of their contractual duties and obligations." (Internal quotation marks omitted.) *Grigerik* v. *Sharpe*, supra, 247 Conn. 317–18.

The plaintiff's position also would extend contract obligations far beyond reasonable expectations. The plaintiff argues that service contracts that benefit the public are enforceable by members of the public as intended third party beneficiaries. Limiting the group of intended beneficiaries to "business invitees," as the plaintiff suggests, however, would be arbitrary. We can see no reason why, on the facts of this case, a service contract like the one between Chase Bank and Pierni, namely, to keep a sidewalk clear of ice and snow, rationally could be construed as intended to benefit only those pedestrians who happen to be customers of the bank, but not pedestrians who happen to walk by the bank. Thus, the plaintiff's claim asks a fact finder to construe such a contract as intended to benefit an unusually broad category of third party beneficiaries. Absent a truly compelling reason why contract liability should be so expanded, we decline to do so.

The plaintiff also relies on 2 Restatement (Second), Contracts § 313, illustration (5) (1981).[9] We are unper-

---

[9] Illustration (5) of § 313 of the Restatement (Second) of Contracts provides: "A, a municipality, owes a duty to the public to keep its streets in repair. B, a street railway company, contracts to keep a portion of these streets in repair but fails to do so. C, a member of the public, is injured thereby. He may bring actions against A and B and can recover judgment against each of them."

suaded. We have not decided whether, as a matter of contract law, § 313 of the Restatement (Second) of Contracts, or its illustrations, accurately reflects our law regarding municipal liability and governmental contracts. We are not inclined, in the present case, to make that decision, which is not presented squarely to us, and then to use such a decision as a predicate for this case.

The judgment is reversed with respect to the granting of the summary judgment motion on the plaintiff's substitute complaint alleging negligence against Pierni and the case is remanded for further proceedings according to law; the judgment is affirmed with respect to the granting of the motion to strike the plaintiff's third party beneficiary breach of contract claim against Pierni.

In this opinion the other justices concurred.