[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (#105 and #107)
On January 3, 2000, the plaintiff, Greystone Condominium Association, Inc., filed an eleven count complaint against the defendants, Boulder Run, LLC (Boulder), R.D. Scinto, Inc.(Scinto), and the town of Shelton (Shelton). The seventh count of the complaint is a claim of recklessness against Shelton. On July 31, 2000, Shelton filed a Motion to Strike Count Seven, on the ground that the plaintiff failed to allege facts necessary to sustain a cause of action for recklessness, and that the plaintiff failed to comply with the notice requirements for holding a municipality liable under General Statutes § 7-465 and Practice Book § 10-68. On January 11, 2001, the plaintiff filed an objection to Shelton's Motion to Strike. On January 23, 2001, at the request of this court, the plaintiff filed a supplemental memorandum (#109) addressing the question of whether the plaintiff has a right to maintain an action against Shelton and the defendant responded (#110).
 I
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "On a motion to strike, the trial court's inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted." In Re Michael D.,58 Conn. App. 119, 122, 752 A.2d 1135, cert. denied, 245 Conn. 911,718 A.2d 17 (2000). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are not supported by the CT Page 5930 facts alleged." (Citations omitted; internal quotation marks omitted.) Id. "We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . ." (Citations omitted; internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260,765 A.2d 505 (2001).
In the Seventh Count of the complaint, the plaintiff incorporates the allegations it made in the First Count. The plaintiff alleges that Shelton issued certificates of occupancy for newly constructed condominium units owned by the plaintiff. (Complaint, Count Seven, ¶ 23.) It alleges that pursuant to General Statutes § 47-121 "no Certificate of Occupancy can be issued unless and until the structure or dwelling substantially conforms to the building code." (Complaint, Count Seven, ¶ 22.) The plaintiff further alleges that the condominiums were constructed by Scinto "in violation of the building code, fire code, statutes, rules, laws, orders and ordinances of the State of Connecticut and [Shelton];" (Complaint, Count Seven, ¶ 18); and that Shelton "was required to examine or cause to be examined all building permit applications, and was also required to review the plans in order to assure substantial compliance with the building and fire codes." (Complaint, Count Seven, ¶ 20.)
The plaintiff further alleges that Shelton "was reckless in that it issued Certificates of Occupancy despite numerous, flagrant, and substantial violations of the building and fire codes;"[1] (Complaint, Count Seven, ¶ 24); and "was reckless in that subsequent to the issuance of the Certificates of Occupancy, it failed to take enforcement/corrective action regarding the numerous, flagrant and substantial violations of the building and fire codes despite being put on written notice of same." (Complaint, Count Seven, ¶ 25.) Finally, the plaintiff alleges that "[i]t was foreseeable that the Association would be injured by the improper issuance of a Certificate of Occupancy or failure to take corrective action," and that Shelton "had a duty of care to the plaintiff which was a foreseeable victim of [Shelton's] recklessness." (Complaint, Count Seven, ¶ 26.)
In the Motion to Strike, Shelton contends that the plaintiff has not alleged facts demonstrating that Shelton officials acted intentionally in issuing the certificates of occupancy or in declining to take remedial action or that it intentionally caused the plaintiff's injuries. It also contends that the plaintiff's allegation that Shelton had notice of the alleged code violations is not sufficient to raise Shelton's alleged CT Page 5931 misconduct to the level of recklessness.
Apparently assuming that this is an action for indemnification, Shelton contends that the plaintiff's seventh count is legally insufficient because pursuant to General Statutes § 7-465, which provides that a municipality may be held liable for damage caused by the acts or omissions of its employees, the plaintiff has failed to allege that it gave Shelton timely notice of its claim as required by that statute and § 10-68 of the Practice Book.[2] Finally, in reply to the plaintiff's supplemental memorandum Shelton argues that the plaintiff has merely added the word "reckless" to a series of allegations which truly sound in negligence to avoid the limitations of § 52-557n.
In opposition to the motion to strike, the plaintiff argues that the court may infer recklessness from the conduct alleged in the complaint. It further argues that § 7-465, including its notice requirement, is inapplicable because the plaintiff is suing the town of Shelton and not a town employee and there is no claim for indemnification. Further, in its supplemental memorandum the plaintiff argues that General Statutes §§52-557n (b)(7) and (8) allow it to sue the municipality independently for reckless conduct.
 II
The plaintiff's Seventh Count is directed at Shelton only, and no officers or employees of the municipality are named as defendants. Although Shelton argues that the plaintiff has not met the notice requirement of General Statutes § 7-465, the municipal indemnification statute, it is clear from the allegations in the complaint that the plaintiff is not bringing an action for indemnification, but is suing the town directly. "[P]ursuant to General Statutes § 52-557n, a plaintiff may sue a municipality directly and forego suing the municipal officer under General Statutes § 7-465."Levien v. Iron Horse Development, Inc., Superior Court, Judicial District of Ansonia/Milford at Milford, Docket No. 050131 (March 26, 1996,Skolnick, J.); Millbrook Owners' Assn. v. East Windsor, Superior Court, Judicial District of Tolland at Rockville, Docket No. 57064 (November 8, 1995, Potter, J.); see also Kaye v. Manchester, 20 Conn. App. 439, 443,568 A.2d 459 (1990) (if employee is not party to suit against municipality, complaint cannot be construed to be claim under 7-465). The court will not grant the motion to strike on the ground that the plaintiff has failed to meet the notice requirements of § 7-465.[3]
The plaintiff argues that General Statutes § 52-557n provides it with authority to sue a municipality directly. The statute provides, in pertinent part: "(a)(1) Except as otherwise provided by law, a political CT Page 5932 subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof. . . ." (Emphasis added.) "Although no appellate case has decided this precise issue, the argument [that § 52-557n does not provide for a direct cause of action against a municipality] . . . has been addressed and rejected by numerous superior courts." (Internal quotation marks omitted.) Albino v.Dauphinais, Superior Court, Judicial District of Waterbury at Waterbury, Docket No. 148206 (April 14, 2000, Leheny, J.); see also Perry v.Wyshynski, Superior Court, Judicial District of Hartford at Hartford, Docket No. 578148 (April 9, 1999, Teller, J.) and cases cited therein.
These decisions are consistent with the general principle of statutory construction that "if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of PublicUtility Control, 246 Conn. 18, 29, 716 A.2d 78 (1998). The presence of the disjunctive "or" in § 52-557n (a)(1)(A) strongly supports the view that a political subdivision may be held liable and sued independently of its officers or employees.[4]
A municipality may be liable and subject to suit independent of its employees, officers or agents under § 52-557n.
 III
Although municipalities may not generally be held liable for the reckless conduct of their employees pursuant to § 52-557n (a)(2),[5]
the plaintiff brings its action under subsections 52-557n (b)(7) and (8) which provide for specific exceptions to this general rule.[6] The issue this court must address is whether a municipality can conduct itself in a reckless manner, and whether it can have reckless intent,[7]
as apparently required for liability to attach under subsections (b)(7) and (8) of § 52-557n.
Under §§ 52-557n (b)(7) or (8) the court considers the conduct of the municipality's employees, officers or agents in determining whether a municipality's conduct constituted a reckless disregard for health or safety. See, e.g., Marceau v. Norwich, 46 Conn. Sup. 197, 199, 203,746 A.2d 836 (1999) (in denying summary judgment on count alleging wanton and reckless conduct against city court considered conduct of city's employee); Millbrook Owners' Assn., Inc. v. East Windsor, supra, Superior Court, Docket No. 57064 (in considering count of direct municipal liability under §§ 52-557n (b)(7) and (8), court considered sufficiency of allegations of reckless conduct by town's building CT Page 5933 inspector).
Furthermore, in considering cases brought under § 52-557n
(a)(1)(A), courts consider the acts of employees, officers or agents of a municipality in determining the direct liability of municipalities for negligence. See, e.g., Albino v. Dauphinais, supra. Superior Court, Docket No. 148206 ("General Statutes § 52-557n provides for a direct cause of action against a municipality for the negligence of its employees."); LaChance v. City of Waterbury, Superior Court, Judicial District of Waterbury, Docket No. 148936 (February 29, 2000, Doherty, J.) ("[P]ursuant to C.G.S. § 52-557n(a)(1)(A) the city is liable directly for damages to person or property caused by the negligent acts or omissions of any agent thereof."); Lyles v. City of Stamford, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 340593 (June 11, 1998, Skolnick, J.) (22 Conn.L.Rptr. 268, 272) ("General Statutes § 52-557n provides for a direct cause of action against the municipality as the principal of the negligent agent, akin to the common law doctrine of respondent superior.").
Thus, although subsection (a) of § 52-557n provides for direct liability of the municipality for its own acts or omissions, because subsections (b)(7) and (8) specifically provide that a municipality can be directly liable for reckless conduct, it cannot be the case that the municipality itself is required to have a reckless intent. The court considers the conduct of employees, officers or agents of the municipality in determining whether a municipality acted with reckless disregard for health or safety.
 IV
Shelton contends that the plaintiff has not alleged facts demonstrating that Shelton officials acted intentionally in issuing the certificates of occupancy or in declining to take remedial action or that it intentionally caused the plaintiff's injuries. It also contends that the plaintiff's allegation that Shelton had notice of the alleged code violations is not sufficient to raise Shelton's alleged misconduct to the level of recklessness.
"Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711
(1988). "[W]illful, wanton, or reckless conduct tends to take on the CT Page 5934 aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 533. "It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Emphasis added.) (Internal quotation marks omitted.) Elliot v. City of Waterbury, 245 Conn. 385,415, 715 A.2d 27 (1998). "Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) Bishop v. Kelly, 206 Conn. 608, 614-15, 539 A.2d 108 (1988). "Simply using the word `reckless' or `recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." Dumond v. Denehy, 145 Conn. 88, 91, 139 A.2d 58
(1958).
The plaintiff argues and alleges that Shelton was reckless pursuant to subsection (b)(7) of General Statutes § 52-557n in that "it issued Certificates of Occupancy at Greystone despite numerous, flagrant and substantial violations of the building and fire codes." The plaintiff also alleges that Shelton was required to examine all building permit applications, review building plans and inspect all work performed to ensure compliance with the building and fire codes. Taken together, these allegations do not merely use the word `reckless' but sufficiently set out the conduct that the plaintiff claims to be reckless. "To be legally sufficient, a claim sounding in recklessness must set forth facts alleging the defendant knew or should have known of the highly dangerous conduct at issue." (Internal quotation marks omitted.) Millbrook Owners'Assn., Inc. v. East Windsor, supra, Superior Court, Docket No. 57064. Even though the plaintiff does not expressly so allege, it may be inferred from these allegations that, pursuant to required examinations and inspections, Shelton knew or should have known of the highly dangerous conditions, that it was aware of the consequences that could or would ensue, but that it issued the certificates anyway.[8] In other words, construed in the manner most favorable to sustaining their legal sufficiency, these paragraphs sufficiently claim that Shelton was reckless because the plaintiff alleges therein that Shelton did more than merely fail to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.
The plaintiff also argues and alleges that Shelton was reckless pursuant to subsection (b)(8) of General Statutes § 52-557n in that "subsequent to the issuance of the Certificates of Occupancy, it failed CT Page 5935 to take enforcement [or] corrective action regarding the numerous, flagrant and substantial violations of the building and fire codes despite being put on written notice of same." Under subsection (b)(8) of § 52-557n, Shelton may be held liable even without a requirement of reckless conduct if it had notice that the property violates any law or contains a hazard to health or safety and it failed to make an inspection or it made an inadequate or negligent inspection. This allegation by itself, therefore, is sufficient to withstand the motion to strike the Seventh Count against Shelton.
The plaintiff expressly alleges that due to the written notice the town knew of the highly dangerous conditions but that it failed to act accordingly. It may be inferred from this allegation that Shelton had the state of mind required for recklessness. Specifically, it may be inferred that Shelton, after knowingly issuing certificates in violation of the law, even failed to take corrective action after having been put on actual notice of the violations. It may further be inferred from this that Shelton consciously chose a course of action with knowledge of the serious danger to others involved, or with knowledge of facts which would disclose this danger to any reasonable person. The allegations in the plaintiff's Seventh Count do more than merely use the word `reckless' and are sufficiently explicit to put the defendant on notice that the plaintiff is relying on reckless misconduct.
The plaintiff may bring an action against the Town of Shelton, independent of its officers, employees, or agents under General Statutes § 52-557n, and the reckless intent of such officers, employees or agents may be attributed to the municipality. Further, the plaintiff has stated a legally sufficient cause of action for recklessness against Shelton.
The Motion to Strike is denied.
DANIEL E. BRENNAN, JR. J.