[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE #106
On June 21, 2002, the plaintiff, Victoria Cintron, filed a six-count complaint against the defendant, Ademco Distribution, Inc., seeking damages resulting from the alleged sexual harassment by the defendant's employees.[1] The plaintiff alleges discriminatory employment practices in violation of Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-60 (8) (count one); assault and battery (count two); intentional infliction of emotional distress (count three); negligent hiring (count four); invasion of privacy (count five); and breach of duty to act in good faith (count six).
The plaintiff alleges the following facts. The plaintiff was hired by the defendant in 1998. In February 1999, the plaintiff walked into the women's bathroom where she observed a co-employee, John Alberino, with a female co-employee. Upon seeing the plaintiff, Alberino made a lewd remark to the plaintiff. After this incident Alberino began making other lewd comments to the plaintiff. For instance, Alberino told the plaintiff that the way he deals with disgruntled employees is by getting his gun and blowing them away. Additionally, the plaintiff's supervisor began making lewd comments in front of the plaintiff. The plaintiff complained to Alberino's supervisor and to human resources about the conduct of Alberino and her supervisor. Because of the aforementioned conduct, the plaintiff was passed over for promotions and subsequently terminated. The defendant endorsed the aforementioned conduct in failing to take any preventative measures despite numerous complaints by the plaintiff.
On October 4, 2002, the defendant filed a motion to strike counts two, five and six of the complaint, accompanied by a memorandum of law in support. On November 4, 2002, the plaintiff filed a memorandum of law in opposition to the defendant's motion to strike.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal CT Page 2441 sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea-Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp. , 240 Conn. 576, 580,693 A.2d 293 (1997). In determining the sufficiency of a complaint, "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.)Gazo v. Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). The court must construe the complaint "in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Id.
Counts Two and Five
The defendant moves to strike counts two (assault and battery) and five (invasion of privacy) on the ground that the Workers' Compensation Act (act), General Statutes § 31-275 et. seq., provides the exclusive remedy for the injuries alleged by the plaintiff. The defendant argues that the act "bars an employee from bringing a common law action against her employer for job related injuries suffered during the course of employment." (Defendant's Memorandum of Law in Support of its Motion to Strike, p. 3.) The plaintiff argues in opposition that the present case is analogous to Haydu v. Meadows, Superior Court, judicial district of Ansonia-Milford at Milford, CV 95 0051983 (March 13, 1997, Flynn, J.), where the court denied the defendant corporation's motion to strike an assault and battery claim because the plaintiff sufficiently alleged that defendant corporation committed and/or ratified the employee-supervisor's behavior, and thus the defendant could be liable for the conduct of one of its employees. The court in Haydu, did not, however, analyze the legal sufficiency of the assault and battery claim under the exclusivity provision of the act.
General Statutes § 31-284 (a) states in pertinent part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of employment . . ." "[T]he purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers . . ." Spatafore v. Yale University, 239 Conn. 408, 417,684 A.2d 1155 (1996).
Our Supreme Court has "consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred . . . An CT Page 2442 employee's injury is compensable under the act if it is an injury arising out of and in the course of employment . . . [A]n intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of his employment, is covered by the compensatory provisions of the [Workers'] Compensation Act." (Citations omitted; internal quotation marks omitted.) Perile v.Raybestos-Manhattan-Europe. Inc. 196 Conn. 529, 532, 494 A.2d 555
(1985).
"In Jett v. Dunlap, 179 Conn. 215, 425 A.2d 1263 (1979), [our Supreme Court] considered whether an employer could be subject to common-law tort liability for a battery that a supervisory employee committed upon a coemployee. [The] court noted that, as a general rule, [a]n intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of his employment, is covered by the compensatory provisions of the [act]." (Internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp. , 242 Conn. 255, 273,698 A.2d 838 (1997). "In Jett, however, the court carved out an exception to the rule: `If the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity, then attribution of corporate responsibility for the actor's conduct is appropriate.' . . . [T]he court concluded that '[i]f the assailant can be identified as the alter ego of the corporation, or the corporation has directed or authorized the assault, then the corporation may be liable in common-law tort; if the assailant is only another employee who cannot be so identified, then the strict liability remedies provided by the [act] are exclusive and cannot be supplemented with common-law damages.'" (Citation omitted; internal quotation marks omitted.) Id., 273-74, quoting Jett v.Dunlap, supra, 219.
In her claim for assault and battery (count two), the plaintiff incorporates paragraphs one through thirty-six of count one. The plaintiff alleges that the conduct of her coemployees and her supervisor, which gives rise to her injuries, was condoned by the defendant because she notified management of the offensive conduct but nothing was done. The plaintiff also alleges, inter alia, that at the time of the assault and battery, the defendant's employees were acting "within the scope of their employment and in furtherance of the [defendant's] business"; (complaint, count two, ¶ 45); and that the defendant "ratified and condoned the acts of [its] employees . . ." (Complaint, Count Two, ¶ 44.)
In her claim for invasion of privacy (count five), the plaintiff incorporates paragraphs one through fifty-six of count four. The CT Page 2443 plaintiff also alleges that the conduct of her co-employees and her supervisor was condoned by the defendant because she notified management of the offensive conduct but nothing was done. She further alleges that "[t]he statements, words and conduct made by the defendant's employees, and ratified by the [defendant], invaded plaintiff's right to privacy by intruding upon a privacy interest that is highly offensive to a reasonable person." (Complaint, Count Five, ¶ 57.)
The plaintiff fails to allege facts to come within the Jett exception to the exclusivity provision of the act. More specifically, the plaintiff does not allege that the defendant directed or authorized the conduct of its employees and supervisors. Although the plaintiff pleads that the defendant ratified and condoned the acts of its employees, "condoning is not an intentional tort on the part of the employer . . ." Jett v.Dunlap, supra, 179 Conn. 220. The plaintiff also fails to plead that the employees were of "such a status in the defendant's organization as to be characterized as the alter ego of the corporation." Id., 219-20. "If the assailant is of such rank in the corporation that he may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity, then attribution of corporate responsibility for the actor's conduct is appropriate. It is inappropriate where the actor is merely a foreman or supervisor." Id., 219.
Accordingly, the defendant's motion to strike counts two and five is granted because the plaintiff has failed to sufficiently plead the Jett
exception to the exclusivity provision of the Workers' Compensation Act.
Count Six
The defendant moves to strike count six, which alleges breach of the implied covenant of good faith and fair dealing, on the ground that the plaintiff cannot state a claim for such an action because she possesses a statutory remedy pursuant to the CFEPA, General Statutes § 46a-51 et seq. The plaintiff argues in opposition that an employee whose employment has been terminated may challenge the discharge "based upon an implied covenant of good faith and fair dealing" if the "discharge involves an impropriety which contravenes some important public policy . . ." (Plaintiff's Memorandum in Opposition to the Motion to Strike, p. 2.)
Incorporated into count six are paragraphs one through fifty-nine of count five in which the plaintiff alleges violations of CFEPA. The plaintiff further alleges that she had a contractual relationship with the defendant and that she was subjected to "sexual assault, threats of bodily harm, sexual harassment or sexual predation by her supervisor," all of which breached the implied covenant of good faith and fair CT Page 2444 dealing. (Complaint, Count six, ¶ 61.) The plaintiff also alleges that the aforementioned acts violated public policy contained in General Statutes §§ 53a-62 and 53a-73a.
The plaintiff is correct that she may challenge her dismissal, however, "[i]n order to maintain a cause of action for breach of good faith where there is an at-will employee, the plaintiff must allege a violation of public policy. See Parsons v. United Technologies Corp.,243 Conn. 66, 76, 799 A.2d 655 (1997). In addition, the plaintiff must be otherwise without remedy. See Burnham v. Karl Gelb, 252 Conn. 153,165, 745 A.2d 178 (2000)." Barnett v. Woods, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 00 0371822 (July 31, 2000, Skolnick, J.) (27 Conn.L.Rptr. 596). "Superior court cases and district court cases have fairly consistently held . . . that neither a wrongful discharge nor a breach of implied covenant claim are available where . . . the plaintiff has adequate statutory remedies through which the alleged public policy violations can be enforced . . ." (Internal quotation marks omitted.) Knight v. Southeastern Council on Alcoholism Drug Dependency, Superior Court, judicial district of New London, Docket No. CV 0557182 (September 21, 2001, Hurley, J.T.R.), and cases cited therein.
Based on the foregoing, because the plaintiff has an adequate statutory remedy under CFEPA to vindicate her claim of wrongful discharge, the defendant's motion to strike count six is granted.
Harper, J.