225 ASSOCIATES *v.* CONNECTICUT HOUSING
FINANCE AUTHORITY
(AC 19583)

Spear, Dranginis and Hennessy, Js.

Argued January 24—officially released August 21, 2001

*Milo J. Altschuler*, for the appellant (plaintiff).

*Thomas J. Sansone*, for the appellee (defendant).

HENNESSY, J. The plaintiff, 225 Associates, appeals from the judgment of the trial court rendered in favor of the defendant, the Connecticut Housing Finance Authority, denying the plaintiff's claims for the return of certain escrow funds, for damages on theories of negligence and breach of contract, and for the payment of insurance proceeds received by the defendant in connection with a building loan agreement.[1]

The plaintiff claims that the court improperly found that (1) the plaintiff was not entitled to a return of moneys it placed in escrow to supplement the contractor's letter of credit, (2) the defendant was entitled to retain certain insurance company proceeds it received in connection with vandalism to the property at issue, (3) the defendant could retain all escrowed funds on the basis of a claim of setoff and (4) the plaintiff had not sustained damages as a consequence of the defendant's actions. We affirm the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. The plaintiff and the defendant entered into a building loan agreement in which the plaintiff borrowed $2,659,000 from the defendant to purchase and renovate a fifty unit apartment building at 225 Golden Hill Street in Bridgeport.[2] In August, 1992, the plaintiff complained

---

[1] The negligence count is based on allegations that the defendant negligently authorized payments to the contractor, thereby preventing the plaintiff from completing the project within the approved construction costs. The breach of contract count alleges that the defendant violated the parties' building loan agreement by not requiring the contractor to file certain forms before approval of advances of the mortgage proceeds, by failing to call the contractor's letter of credit and by disbursing funds for work improperly performed by the contractor. The final claim alleges that the defendant refused to endorse to the plaintiff insurance proceeds that the defendant had received as a result of damage to the property caused by vandals.

[2] The closing documents include a mortgage deed, one of the conditions of which is that the defendant agrees to advance to the plaintiff the balance of the loan ($1,375,241 had been disbursed to the plaintiff for purposes of site acquisition) "in installments as the work progresses . . . ."

to the defendant that the general contractor, Brack Poitier, was paid for work that was not completed in a workmanlike manner and was not making payment to his subcontractors with the funds that he was receiving from the plaintiff, which had been disbursed to the plaintiff by the defendant for payment to Poitier[3] under the terms of the parties' loan documents. Due to those concerns, the plaintiff withheld subsequent payment to Poitier. Poitier responded by walking off the job. No further construction has taken place since that time. The plaintiff instituted an action against the defendant seeking damages. The plaintiff also sought to recover certain funds that were being held in escrow by the defendant. The court ruled that the plaintiff was not entitled to recover the funds it sought and rendered judgment for the defendant on all counts. The plaintiff thereafter appealed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly found that it was not entitled to recover moneys that it had placed in escrow to make up the difference between the amount of escrow that Poitier was required to deposit and that amount that Poitier actually was able to deposit. We do not agree.

Pursuant to a completion assurance agreement, Poitier was obligated to deposit with the defendant $169,790 at the loan closing to secure or indemnify the defendant or the plaintiff for expenses, loss or damage suffered as a result of any default by Poitier.[4] Poitier

---

[3] The defendant, in accordance with the loan agreement, was releasing loan proceeds to Poitier, the general contractor, as payment for work performed and satisfactorily completed.

[4] In its April 23, 1999 memorandum of decision on the motion for reargument, the court found that "[t]he fund was to be maintained by the defendant and was to be disbursed (1) during the course of construction to Poitier as deemed necessary; (2) upon final closing; or (3) '[i]n the event of default by [Poitier] under the construction contract: the entire fund or balance remaining therein to the lender; to be used by the lender to indemnify it

was unable to post the entire amount required by the completion assurance agreement. He deposited $130,000 by means of a letter of credit established by the Connecticut National Bank, and the plaintiff posted the remaining $39,790 on Poitier's behalf. Subsequently, Poitier walked off the job and ignored the defendant's request to have his letter of credit extended. Following Poitier's withdrawal from the project, the defendant released Poitier's letter of credit, citing the fact that the defendant could not call the letter of credit unless Poitier was deemed in default. In its June 23, 1998 memorandum of decision, the court held that none of the disbursement provisions of the completion assurance agreement had been triggered and that the plaintiff, thus, was not entitled to the return of the $39,790 that it had deposited. In this appeal, the plaintiff claims that the ruling was incorrect.[5]

As an initial matter, we set forth the applicable standard of appellate review. The court's determination that the $39,790 put into escrow by the plaintiff should be treated differently from the contractor's letter of credit is based on that court's findings of fact. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings are clearly erroneous." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 539, 767 A.2d 1169 (2001). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Holt* v. *People's Bank*, 62 Conn.

___

and the owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of [Poitier's] failure to properly perform said construction contract.' "

[5] See footnote 4.

App. 561, 564–65, 771 A.2d 266, cert. denied, 256 Conn. 917, 773 A.2d 944 (2001).

The plaintiff argues that the letter of credit and the $39,790 paid by the plaintiff on behalf of Poitier should be treated the same and that the defendant's failure to call the letter of credit was equivalent to disbursing the other $130,000 to Poitier. The plaintiff further contends that the parties intended both the letter of credit and the $39,790 to be security under the completion assurance agreement. Hence, the plaintiff argues that if the disbursement requirements did not apply to Poitier's letter of credit, then they should not apply to the $39,790 deposited by the plaintiff.

The defendant argues that the $39,790 should be treated differently from the letter of credit for two reasons. First, the defendant avers that the terms of the completion assurance agreement did not allow it to draw on Poitier's letter of credit unless he performed unsatisfactorily. We agree. Because the court did not find that Poitier had breached the completion assurance agreement, under its terms, the defendant could not call Poitier's letter of credit.

Second, the defendant argues that it is entitled to retain the $39,790 because the mortgage deed gives the defendant the right of setoff against all of the plaintiff's moneys on deposit with the defendant.[6] Thus, the defendant argues that it should be allowed use of the $39,790 as a setoff against the more than $2 million that the plaintiff owes to the defendant. We agree.

---

[6] Under article V, § 5.01, of the mortgage deed, titled "Lien and Right of Setoff," the plaintiff and the defendant agreed as follows: "Mortgagor hereby gives the Mortgagee a lien and right of setoff for all of Mortgagor's liabilities hereunder upon and against all deposits, credits and property of the makers, endorsers or guarantors of the Note or notes secured hereby other than the Mortgaged Property and any other collateral of a maker, endorser or guarantor now or hereafter in possession or control of Mortgagee or in transit to it. Mortgagee may, at any time, apply the same or any part thereof to any liability of Mortgagor even though unmatured."

The moneys deposited with the defendant by the plaintiff on behalf of Poitier were subject to the defendant's right of setoff as defined in § 5.01 of the parties' mortgage deed. As such, the $39,790 properly was subject to being applied to any outstanding debt owed to the defendant by the plaintiff. Additionally, not calling the letter of credit did not in any way invalidate the right of setoff exercised by the defendant. The court, therefore, was correct in its finding that the plaintiff was not entitled to recover the $39,790 it had placed in escrow as the balance that Poitier owed under the completion assurance agreement.

## II

The plaintiff next claims that the court improperly found that the plaintiff was not entitled to recover any of the $150,000[7] received by the defendant from an insurance company in connection with vandalism to the property. The plaintiff limited its claim for purposes of this appeal to $73,436, the amount the defendant is prepared to release from an insurance proceeds.[8]

The court held that the disbursement of the insurance proceeds was conditioned on compliance with the terms set forth in the January 21, 1993 letter from the

---

[7] A letter dated January 21, 1993, from the defendant to the plaintiff, detailed the $150,000 ($149,818) in insurance proceeds as follows:

That which the defendant is prepared to release:

| | |
|---|---|
| Hart Electric | $ 6,758 |
| P&P Carting | 6,750 |
| Brown Elevator | 24,046 |
| Nutmeg Adjusters | 10,000 |
| Charles Jones, AIA | 2,146 |
| Brack Poitier | 23,736 |
| TOTAL | 73,436 |

The estimated balance of $24,202 which will be released on completion of the work.

Items requested but not approved:

| | |
|---|---|
| Security | $48,690 |
| Attorney's fees | 3,490 |

[8] See footnote 7.

defendant to the plaintiff. The plaintiff argues that the letter does not impose any conditions on the release of the initial $73,436, and that the listed requirements and conditions in the letter apply only to the release of the remaining insurance and mortgage proceeds. The plaintiff relies specifically on the following language: "Upon receipt of the insurance check . . . in the amount of $150,000, the [defendant] is prepared to release $73,436 . . . ." Thus, the plaintiff argues that the court's conclusion that the release of *any* funds, including the $73,436, is subject to fulfillment of the conditions set forth in the letter is clearly erroneous. Additionally, the plaintiff claims that this alleged impropriety directly affects an element of the claimed damages, which requires us to reverse the judgment and order the defendant to pay $73,436 to the plaintiff. We do not agree.

The court's conclusion that the plaintiff was not entitled to the return of the insurance proceeds is consistent with its factual findings. The court found that the January 21, 1993 letter did not state that the $73,436 in proceeds was unconditionally promised to the plaintiff. Additionally, the court found that the plaintiff had not complied with or submitted evidence that it had met the conditions contained in the letter and, thus, did not have a right to the proceeds. The court indicated that the plaintiff incorrectly sought disbursement of the proceeds directly to itself rather than the use of the proceeds in conformance with the letter. The court also relied on the terms of the mortgage deed, which states in relevant part that the defendant "may apply the net proceeds, at its option, as a credit on any portion of the Indebtedness, or to the [plaintiff] for the purpose of restoration of the Improvements in accordance with the procedures and otherwise under the terms and conditions of this Mortgage. . . ." "[These are] factual finding[s] that this court cannot overturn unless [they are]

clearly erroneous." *State* v. *Jeudis*, 62 Conn. App. 787, 792, 772 A.2d 715, cert. denied, 256 Conn. 923, 774 A.2d 140 (2001). The plaintiff's argument that the facts found by the court are clearly erroneous is unavailing.

We agree with the court that the plaintiff did not comply with the conditions contained in the January 21, 1993 letter and, as such, did not qualify to receive payments from the insurance proceeds. We find equally unavailing the plaintiff's contention that the defendant should release the $73,436 portion of the insurance proceeds because the letter placed no conditions on the payment of the proceeds. The mortgage deed explicitly provides that the defendant had the option of applying the insurance proceeds to any outstanding indebtedness. The plaintiff therefore has failed to show that the court's decision was clearly erroneous.

III

The plaintiff next claims that the court improperly ruled that the defendant could retain certain escrowed funds[9] on the basis of a claim of setoff. Specifically, the plaintiff argues that (1) the defendant did not file a counterclaim or cross complaint alleging the right of setoff and only claimed the right of setoff as a special defense, (2) because the court did not award any damages to the plaintiff, there was no order in the plaintiff's favor against which setoff was available and (3) there were no mutual debts, which a setoff requires. The plaintiff, therefore, contends that there is no legal reason not to return the escrowed funds to the plaintiff. For purposes of clarity, we will address each of the plaintiff's three contentions regarding setoff separately.

---

[9] The escrow funds sought by the plaintiff are $41,000 placed with the defendant for an operating deficit guaranty, $5000 for an insurance escrow and $10,000 for approved attorney's fees.

A

The plaintiff contends that there is no right of setoff available to the defendant because it only pleaded setoff by means of a special defense and not by way of a counterclaim or cross complaint. We disagree.

"Traditionally, the distinction between a setoff and a counterclaim centers around whether the claim arises from the same transaction described in the complaint. If the claim involves a debt which is mutual and liquidated, even though it arises from separate transactions, it is characterized as a setoff. See General Statutes § 52-139. If the claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim. *Savings Bank of New London* v. *Santaniello*, 130 Conn. 206, [210], 33 A.2d 126 (1943). The title of the pleading is not controlling. The issue is, rather, whether sufficient facts are pleaded that would allow recovery either as a setoff or as a counterclaim. *Peters Production, Inc.* v. *Dawson*, 182 Conn. 526, 528, 438 A.2d 747 (1980)." *Northwestern Electric, Inc.* v. *Rozbicki*, 6 Conn. App. 417, 426, 505 A.2d 750 (1986).

In its pleadings, the plaintiff alleges financial loss and moneys owed to it by the defendant resulting from the defendant's failure to adhere to the terms of the documents executed in connection with the defendant's lending of funds to the plaintiff. The court's finding that the defendant had a right of setoff cannot be overturned on the basis that the claim was improperly pleaded, especially in light of the fact that the plaintiff was on notice of the claim of setoff and cannot be said to have been prejudiced in any way.

The defendant asserted in a special defense that any offset that it had against the plaintiff barred the plaintiff's cause of action. The mortgage deed and the note executed by the parties, and the other "loan documents" give the mortgagee a lien and a right of setoff for all

of the mortgagor's liabilities in connection with the funding of the project. We agree, therefore, with the defendant that sufficient facts were pleaded that would allow recovery either as a setoff or as a counterclaim.

## B

The plaintiff further argues that setoff is unavailable to the defendant because the court found that the plaintiff was not entitled to damages and, as a result, there was nothing against which the defendant's claim could be offset. We do not agree.

"The policy of the law is always to prevent unnecessary litigation, and where . . . entire justice can be done to both of the parties before the court, by the ascertainment and set-off of their mutual claims against each other, without a violation of any of the settled rules or forms of law, such set-off ought always to be made. . . . A set-off is made where the defendant has a debt against the plaintiff . . . and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, and, as the case may be, to recover a judgment in his own favor for a balance." (Citation omitted; internal quotation marks omitted.) *Hope's Architectural Products, Inc.* v. *Fox Steel Co.*, 44 Conn. App. 759, 762, 692 A.2d 829, cert. denied, 241 Conn. 915, 696 A.2d 985 (1997).

The court heard testimony that the plaintiff owed the defendant more than $2 million on the mortgage note. The plaintiff argues that the note was a nonrecourse instrument, which it claims restricts the defendant from looking beyond the real property for satisfaction on the note. As the defendant correctly argues, however, the provisions of the mortgage deed grant the defendant a security interest not only in the real property, but also in the plaintiff's moneys being held by the defendant in escrow accounts. The plaintiff breached its contractual obligations and remains in debt to the defendant. The

court found, and we agree, that where the plaintiff would otherwise be entitled to recover some of the escrowed moneys at issue, breach of its contractual obligations precludes it from doing so, and the defendant is entitled to use the escrowed funds as compensation in light of the plaintiff's failure to perform.

## C

Additionally, the plaintiff contends that setoff is unavailable to the defendant because there are no mutual debts between the parties, as required under § 52-139.[10] In its complaint, the plaintiff sought damages as reimbursement for the performance of work required by the defendant, for insurable losses and for work required to be done as a result of an insurable loss.

The court found that "where the plaintiff would otherwise be entitled to recover some of the escrowed moneys at issue, it is precluded from doing so due to its own breach of its contractual obligations." The court also found that the plaintiff was obligated to pay all fees and costs for court or administrative proceedings by reason of the note, mortgage or other instruments securing the note, in addition to the outstanding balance due on the loan from the defendant. The record discloses adequate facts to support the court's conclusion that the defendant had a right of setoff.

## IV

The plaintiff also claims that the court improperly found that the plaintiff did not suffer any injury as a result of the defendant's breach of its duty in failing to perform independent inspections, and did not suffer

---

[10] General Statutes § 52-139 (a) provides: "In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other."

any injury as a result of a breach of the completion assurance agreement and the building loan agreement. We disagree.

A

Pursuant to the building loan agreement, before a requisition for payment for work performed was honored, certain individuals would conduct a walk-through to determine if the work was properly completed.[11] The group would then sign the requisitions for payment. By signing and certifying the requisitions, the defendant impliedly affirmed that it had independently inspected the subject work and found it acceptable.

Peter Durante, the defendant's field observer, testified that he "rubber-stamped" that which the owner, the contractor and the architect had approved. On the basis of that testimony, the court found that the defendant had breached its duty to perform independent inspections. The court, however, found that the plaintiff had failed to prove that any of the work certified by the defendant was incomplete or not performed in a workmanlike manner. The court listed factors that supported its finding. It found that Michael J. Creed, who was one of the partners of the plaintiff, and Charles Jones, the plaintiff's architect, never complained about work performed by Poitier. The court also found that the final report of the plaintiff's architect indicated that even if the work initially was not properly completed, it later was repaired or the plaintiff received a credit, and the plaintiff failed to complain about the work performed on the property until after Poitier walked off the job.

[11] The individuals who participated in the walk-throughs were Poitier, who was the contractor, Peter Durante, who was the defendant's field observer, Charles Jones, who was the plaintiff's architect, and Michael J. Creed, who was one of the partners of the plaintiff.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999). The court's findings that the plaintiff suffered no harm even though the defendant had breached its duty were consistent and supported by the evidence. Thus, the court's findings were not clearly erroneous.

## B

The plaintiff next argues that the defendant's failure to conduct independent inspections of the work caused the plaintiff to withhold payment to Poitier out of concern for work performance, which ultimately resulted in his walking off the job and the failure of the project. The plaintiff claims that the cessation of work on the project was a breach of the agreements executed by the parties and that it caused the plaintiff to incur financial loss.[12] The plaintiff, however, failed to prove that the work stoppage was a result of any action of the defendant. The defendant asserted that it would have will-

---

[12] The plaintiff argues that the defendant should have called the letter of credit under the terms of the completion assurance agreement, which states in relevant part: "In the event of a default by the contractor [Poitier] under the Construction Contract: the entire Fund or balance remaining therein to the Lender; to be used by the Lender to indemnify it and the Owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of the Contractor's failure to properly perform said Construction Contract."

The plaintiff bases its claim on the economic loss it suffered due to defectively painted doors. Although remedying the problem would cost approximately $28,600, the court found that the plaintiff had suffered no damage as a result thereof because the plaintiff was credited for work not completed or negligently completed by Poitier, including the finish on the doors.

ingly accepted another contractor proffered by the plaintiff to complete the job with the remaining loan proceeds. The plaintiff did not accept that offer. Furthermore, the plaintiff was indemnified for the negligent work by Poitier out of the moneys it owed to Poitier. Thus, the plaintiff's arguments are unavailing. The court correctly found that the defendant's failure to conduct inspections of Poitier's work did not result in damage to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.