# LISA LIND-LARSEN *v.* FLEET NATIONAL BANK OF CONNECTICUT ET AL.
## (AC 23503)

Foti, Flynn and DiPentima, Js.

Argued January 15—officially released July 20, 2004

*Lisa Lind-Larsen*, pro se, the appellant (plaintiff).

*Craig S. Taschner*, for the appellees (named defendant et al.).

*Michele D. Sensale*, for the appellee (substitute defendant Ocwen Federal Bank, FSB).

*Opinion*

FLYNN, J. The plaintiff, Lisa Lind-Larsen,[1] appeals from the summary judgment rendered by the trial court in favor of the defendants, Fleet National Bank of Connecticut and its subsidiary, GTT Corporation, (Fleet)[2] and Ocwen Federal Bank, FSB (Ocwen). The court granted Fleet's motion for summary judgment on the

---

[1] The plaintiff changed her name during the course of litigation from Lise-Lotte Knudsen to Lisa Lind-Larsen.

[2] GTT Corporation is a wholly owned subsidiary of Fleet National Bank of Connecticut. Shawmut Bank, Connecticut, N.A., Fleet's predecessor in interest, quitclaimed the Sanford Homestead to GTT Corporation, as trustee of Onyx Properties Realty Trust, by a deed recorded March 20, 1995, in volume 192 at page 727, of the Redding land records.

ground that the respective statutes of limitation applicable to counts one through five of the plaintiff's complaint had expired and could not be resuscitated by the accidental failure of suit statute, General Statutes § 52-592. The court also found that counts six and seven of the plaintiff's complaint alleged against Fleet failed as a matter of law as a result of the plaintiff's lack of compliance with the terms of the parties' stipulated judgment. As to the eighth and final count, the court granted Ocwen's motion for summary judgment on the ground that the plaintiff's sole claim asserted against Ocwen was derivative of her claims against Fleet and, as such, the claim must also fail as a matter of law.

The plaintiff argues on appeal that the court improperly found that there were no genuine issues of material fact. Specifically, she argues that the court acted improperly in that (1) it declined to apply the accidental failure of suit statute to her claims, and, accordingly, improperly determined that the claims were not brought within the permissible statutory time periods, (2) it concluded that the payment deadline expressed in the stipulated judgment was not subject to an interpretation of the parties' intent and (3) it found that the claim against Ocwen failed because it was derivative of the claims against Fleet. We affirm the judgment of the trial court granting the defendants' motions for summary judgment.

The facts and procedural history of this case weave an intricate and sometimes convoluted web, which we now attempt to untangle. The plaintiff refinanced her primary residence at 6-8 Packer Brook Road, Redding, in 1988 by granting a mortgage for $282,000 to Connecticut National Mortgage Company, the predecessor to Ocwen, dated April 7, 1988, and recorded in volume 145 at page 407 of the Redding land records. The plaintiff's complaint alleged that her purpose in obtaining the residential mortgage was to use the funds to develop

another property known as the "Sanford Homestead" (Homestead), located at 140 Black Rock Turnpike, Redding. The plaintiff also granted two commercial mortgages on the Homestead. These mortgages were to Gateway Bank (Gateway), dated July 16, 1986, and February 27, 1987, and were respectively in the amount of $350,000, recorded on July 21, 1986, in volume 133, page 792, and in the amount of $57,000, recorded on March 2, 1987, in volume 138, page 486, of the Redding land records.

Connecticut National Mortgage Company assigned the mortgage on the plaintiff's home to Shawmut Bank, Connecticut, N.A. (Shawmut). Gateway brought an action to foreclose its two commercial mortgages on the Homestead due to the plaintiff's delinquency in making payments. A year later, Shawmut acquired these mortgages from Gateway and became the substituted plaintiff in the foreclosure action. At the time Shawmut acquired the two Gateway commercial mortgages on the Homestead, Shawmut already owned another commercial mortgage on the Homestead, which was in the face amount of $213,000, dated September 2, 1987 and recorded on September 3, 1987, in volume 142, page 254, of the Redding land records, and subsequently modified in volume 145, page 1164, of the Redding land records.

In 1993, the plaintiff filed a separate action against Shawmut (1993 action), claiming that the foreclosure action and refusal to convey title to her had frustrated her attempts to sell the Homestead property and also caused her to suffer a "stress-induced respiratory failure," which required her to be hospitalized. Her complaint sounded in negligence and unfair trade practices.

On December 13, 1993, the plaintiff withdrew her complaint as part of a settlement agreement with Shawmut. The parties agreed to resolve all pending claims

by entering into a stipulated judgment of strict foreclosure of the commercial mortgages on the Homestead premises. This agreement was adopted and approved by the court by written order rendering judgment dated December 14, 1993. Under the stipulated judgment, the plaintiff was to be foreclosed as of February 17, 1994, the law day, by which she was required to redeem. However, if she did not redeem, she still could have obtained title by quitclaim deed to three of the four lots covered by the Homestead mortgage upon payment of $350,000 on or before March 1, 1994. The February 17, 1994 law day passed without redemption, and the plaintiff did not pay the $350,000 by March 1, 1994, for the three lots referred to in the stipulated judgment. Title to the entire Homestead property remained vested in Shawmut. The specific terms of the judgment are detailed in part I B.

After her failure either to redeem or to make the $350,000 payment to buy three of the lots back from Shawmut, the plaintiff subsequently filed a second action against Shawmut on March 4, 1994 (1994 action). She sought to impose a constructive trust on three lots of the Homestead property and alleged that Shawmut had breached the stipulated judgment by refusing to extend the payment deadline. In conjunction with the 1994 action, the plaintiff filed a notice of lis pendens, which was discharged by the court on Shawmut's motion. The court found no probable cause to sustain the lis pendens on the ground that the March 1, 1994 deadline was a final cutoff date for payment of the $350,000, and, therefore, the plaintiff had not been entitled to an extension. This judgment was subsequently affirmed by this court in *Shawmut Bank* v. *Knudsen*, 38 Conn. App. 919, 659 A.2d 1240, cert. denied, 235 Conn. 920, 665 A.2d 906 (1995) (per curiam).

On March 8, 1996, the plaintiff filed another action against Shawmut (1996 action), which realleged claims

from both the 1993 and 1994 actions. The plaintiff withdrew her 1994 action after the court, *Radcliffe, J.*, found that all of the issues contained therein had been raised in count six of her 1996 action.[3] The only new claim alleged by the plaintiff in the 1996 action was the seventh count, which was brought against OCI Mortgage Company, the successor to Connecticut National Mortgage Company and a predecessor to Ocwen. Fleet, the successor to Shawmut, requested that the plaintiff revise her complaint, to which the plaintiff filed an objection that was overruled by the court. The plaintiff subsequently amended her complaint, and Fleet filed a motion for nonsuit, alleging that the revision was inadequate. The court granted Fleet's motion over the plaintiff's objection, and the plaintiff's 1996 case was dismissed. The plaintiff's motion to open the judgment of nonsuit was denied on December 24, 1996. On April 15, 1997, the plaintiff brought the action now pending before this court (1997 action) in an attempt to revive the 1996 action under authority of the accidental failure of suit statute.

Both Fleet and Ocwen filed motions for summary judgment, which were granted by the court. The court found that claims one through five, alleged against Fleet, as successor to Shawmut, were not saved by the accidental failure of suit statute and were time barred by their respective statutes of limitation. As to counts six and seven, which were also alleged against Fleet as successor and related to the terms of the stipulated judgment, the court found that the stipulated judgment unambiguously stated that March 1, 1994, was a finite deadline by which the plaintiff was required to make

[3] The plaintiff asserts that her 1994 action was consolidated with her 1996 action, resulting in her withdrawal of the 1994 action. The plaintiff has provided us with no record of an order granting such consolidation. However, because the resolution of the claim that is implicated by the 1994 action does not hinge on a statute of limitations defense, an inquiry of when the action commenced is not required.

payment. The court determined that the interpretation of the stipulated judgment was a question of law, and not of fact, and concluded that the plaintiff's failure to meet this deadline conclusively negated her claims. With respect to the eighth and final count of the plaintiff's complaint, which was alleged against Ocwen and sought a setoff and tort damages, the court found that part of this claim was predicated on the plaintiff's ability to prevail in her claims against Fleet. Because she did not prevail in counts one through seven, the court found that this part of her final claim had no valid basis on which to be sustained. The second part of her final claim was also dismissed because it alleged tortious conduct committed by Ocwen's predecessor, and not by Ocwen itself, and, therefore, the court held that Ocwen was not liable.

The standard of review of decisions granting motions for summary judgment is well settled. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[A]s a general rule, summary judgment may be rendered where the claim is barred by the statute of limitations. . . . Because the matter of whether a party's claim is barred by the statute of limitations is a question of law, we review the [plaintiff's claim] de novo." (Citation omitted; internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 79 Conn. App. 290, 294, 830 A.2d 346 (2003).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and

logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 448, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

I

The plaintiff's first claim requires us to review the court's conclusion that the first five counts of her complaint were barred by statutes of limitation and did not meet the requirements for redemption under § 52-592, the accidental failure of suit statute. The plaintiff's claim primarily relies on two arguments. First, she argues that the accidental failure of suit statute saved her 1997 action because the 1993 action was an "original action" for purposes of tolling the applicable statutes of limitation, and the 1996 action was merely a "reinstatement" of her 1993 action. Second, she argues that because her claims stem from her written contract with Shawmut, the six year statute of limitations applying to contracts, General Statutes § 52-576, should apply rather than the three year statute of limitations that applies to tort claims, General Statutes § 52-577.

A

The plaintiff's first argument cannot succeed. Her contention that the 1993 action and the 1996 action are both "original actions" under the accidental failure of suit statute is misplaced. Section 52-592 provides in relevant part: "(a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." "Deemed a 'saving statute,' § 52-592 enables plaintiffs to bring anew causes of actions

despite the expiration of the applicable statute of limitations." *Pepitone* v. *Serman*, 69 Conn. App. 614, 619, 794 A.2d 1136 (2002).

Our Supreme Court has construed the term "original action" with respect to its meaning in § 52-592 as "the first action filed within the time allowed by the applicable statute of limitations." (Internal quotation marks omitted.) *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 120, 735 A.2d 782 (1999). When we apply this definition, it appears at first blush that the 1993 action would be considered the original action under the statute because it was the first to be filed within the time allowed by the statute of limitations. However, the statute also requires that the action fail to be heard on its merits due to a matter of form and that a new action be commenced within one year of the determination of this "original" action. The plaintiff's 1993 action did not fail to be heard due to a matter of form. Rather, the plaintiff withdrew this action as part of a settlement agreement with Shawmut in December, 1993. It is well settled that "withdrawal . . . cannot by the most liberal construction constitute accidental failure of suit for matter of form . . . ." (Internal quotation marks omitted.) *Parrott* v. *Meacham*, 161 Conn. 573, 575, 290 A.2d 335 (1971).

The plaintiff argues that the 1993 action was timely filed and complies with § 52-592. She ignores the fact that this action was withdrawn in 1993 and argues that the 1996 action was merely a "reinstatement" of the 1993 action rather than a new action, and, therefore, that the 1993 action was never "determined" under the statute. Such a construction defies our explanation of the effect of a withdrawal as "strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket." (Internal quotation marks omitted.) *Sicaras* v. *Hartford*, 44 Conn. App.

771, 776, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997).

The plaintiff concludes that because the 1996 action, unlike the 1993 action, failed to be heard on its merits due to a matter of form and because her 1997 action was brought within one year of the dismissal of the 1996 action, she is in full compliance with the statute. Her argument is that "more than one action [can qualify] as 'the first original action' filed within the applicable statute of limitation and determined within a year of the substituted action." In effect, the plaintiff is using two distinct actions in an attempt to satisfy multiple requirements of § 52-592. If the claims made in the 1996 action were brought within the time permitted by their respective statutes of limitation, then the plaintiff would have satisfied the statute fully. However, they were not timely, and the court correctly determined that the plaintiff could not resurrect her 1993 action, which was withdrawn, by an effort to utilize § 52-592 to save her claims.

B

We next turn to the court's granting of Fleet's motion for summary judgment on counts one through five of the plaintiff's complaint. The court determined that all five counts were untimely brought due to the expiration of their respective statutes of limitation. In her brief, the plaintiff argues that because her mortgage agreement is a written contract, the six year statute of limitations that applies to breach of contract actions should apply to her entire complaint. However, the fact that the plaintiff may have had a contract with Fleet's predecessor in interest does not automatically place her claims under the statute of limitations period for breach of contract actions. We next examine each of these counts to determine whether they were untimely filed.

Count one of the plaintiff's complaint alleges that Shawmut violated General Statutes § 49-8 by refusing to respond to her request for release of her mortgage, which caused her to suffer substantial losses. Section 49-8 sets forth the proper calculation of damages for its violation, but the statute does not establish a specific time limitation within which an action must be brought. The court determined that an action for damages under § 49-8 is an action founded on a tort and applied the general three year statute of limitations for tort claims as set forth in § 52-577. We need not reach the issue of whether the court properly applied the three year tort statute of limitations to this claim because we hold on alternate grounds, raised by the defendants, that the plaintiff's claim fails as a matter of law.[4] The plaintiff neither pleaded nor offered any counteraffidavit opposing summary judgment that she had tendered to the mortgagee the amount that she owed.

To sustain a claim under § 49-8, the plaintiff must show that he or she can satisfy the debt owed on the mortgage. This is essential to maintaining a claim under § 49-8 because "[the mortgagee] is not bound to tender or offer a release of the mortgage until the debt is satisfied." (Internal quotation marks omitted.) *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 181, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). In *Tucker*, our Supreme Court held that "[a] tender must be unconditional and unqualified." (Internal quotation marks omitted.) Id. Because the mortgagor's offer to satisfy the debt was conditioned on the mortgagee's acceptance of less than the full amount of the mortgage debts, legal tender was not made and the mortgagee was not required to release the mortgage. Id.

---

[4] See *Karatonis* v. *East Hartford*, 71 Conn. App. 859, 860, 804 A.2d 861 (judgment affirmed on alternate ground without addressing issues raised on appeal), cert. denied, 261 Conn. 944, 808 A.2d 1137 (2002); see also *Lunn* v. *Cummings & Lockwood*, 56 Conn. App. 363, 369, 743 A.2d 653 (2000).

In the present case, the plaintiff alleged that Shawmut "refused to respond" to her requests for releases of her mortgage. If the bank had refused to respond to a request made by the plaintiff where the full amount of the debt was to be paid, then the plaintiff's claim would be valid. However, Shawmut's eventual response to the plaintiff stated: "The net result of this proposal after all three parcels were liquidated would be $375,000 to the Bank on a debt exceeding $800,000. Your proposal also included payments totaling $120,000 to other parties which are not closing costs. This obviously is unacceptable to the Bank." The plaintiff also admitted, in her deposition testimony, that she had never offered to pay the bank in full everything that it was owed and conceded that Shawmut could have requested her to pay the full $800,000 it was owed. The inevitable legal conclusion we must draw is that the plaintiff's claim is actually that Shawmut was not willing to accept less than it was owed in order to allow the plaintiff to effectuate the sale of the property. This claim cannot succeed unless we ignore the law in this jurisdiction that inherent in a mortgage is "the right of the mortgagee to insist upon full payment before giving up his security . . . ." *New England Mortgage Realty Co.* v. *Rossini*, 121 Conn. 214, 219, 183 A. 744 (1936). Shawmut's failure to release the plaintiff's mortgage for substantially less than it was owed does not violate the provisions of § 49-8.

The second and third counts of the plaintiff's complaint alleged violations of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff's complaint alleged that Shawmut committed intentional interference with a contractual agreement and breached its duty of good faith and fair dealing. Pursuant to General Statutes § 42-110g (f), "[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter." The plaintiff contends that the offense of

which she complains was committed prior to or on the date of April 17, 1992. Therefore, for these CUTPA claims to have been viable, they would have had to have been brought on or before April 17, 1995. The plaintiff's complaint that was nonsuited was not commenced until March 15, 1996, more than three years after the alleged CUTPA violations occurred. Therefore, the plaintiff's claims are barred by § 42-110g (f). The 1996 action was nonsuited and the plaintiff seeks to revive her CUTPA claims under the accidental failure of suit statute, § 52-592. Her argument fails because, although her original action failed to be tried on its merits, that action did not satisfy the statutory mandate that the action was timely commenced.

Count four of the plaintiff's complaint alleged that Shawmut "negligently" failed to respond to her request for release of her mortgages, which caused her to endure stress resulting in personal injury. The plaintiff claimed that she suffered "physical injury and permanent damage to her health" and incurred medical costs in the amount of $32,000. The plaintiff sought to recover damages for personal injury caused by Shawmut's alleged negligent conduct. This claim is therefore subject to the limitation imposed by General Statutes § 52-584, which provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained . . . and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

Shawmut's alleged negligent conduct occurred on or before April 17, 1992. The plaintiff claimed that she had experienced a "stress induced respiratory failure" and was admitted to Danbury Hospital. At some unspecified time, she lost consciousness and did not regain consciousness until April 24, 1992. The plaintiff did not

bring her claim of personal injury until March 15, 1996, more than three years after the alleged negligent conduct occurred, and thus was barred by § 52-584. The 1996 action was nonsuited and the plaintiff seeks to revive her negligence claim under the accidental failure of suit statute, § 52-592. Her argument again fails because although her original action was not tried on its merits, the action did not satisfy the statutory mandate that it be timely commenced.

The issue we must resolve regarding the plaintiff's fifth count is whether the plaintiff set forth a cause of action for breach of contract or for tortious conduct arising out of a duty imposed by contract. In making this determination, we first look to the allegations of the complaint. "[T]he plaintiff's allegations are the measure of his right of recovery. . . . Contracts, especially, should be proved as alleged in every essential particular, for while they may be stated according to their legal effect, the pleading should be such as to fairly apprise the adverse party of the state of facts which it is intended to prove." *Mazziotti* v. *DiMartino*, 103 Conn. 491, 496, 130 A. 844 (1925).

The fifth count of the plaintiff's complaint alleged that Shawmut's failure to respond or to take remedial action following her request for release of her mortgage was an intentional breach of "the agreement between [the] plaintiff and Connecticut National Bank" concerning the repayment method of her residential mortgage. It also alleged that Shawmut, which had been assigned the residential mortgage, had "repudiated" the agreement by "stating that none of the proceeds from the first sale could be used to pay down the residential mortgage." The plaintiff sought damages in the form of pain and suffering as a result of this alleged breach. The terms "breach" and "repudiation" were used in the plaintiff's complaint, but the complaint did not specify that the "agreement" that was allegedly breached or

repudiated was an actual contract in that there was a valid offer and acceptance supported by adequate consideration, nor did it explain the terms of the agreement or the obligations of the parties. In attempting to construe the true nature of this count, therefore, we look to the relief sought.

The type of relief the plaintiff has sought ultimately guides our determination of the nature of the fifth count. If the plaintiff successfully alleged facts constituting a breach of contract, then the relief she sought must correspond to those allegations. We find the holding of *Gazo* v. *Stamford*, 255 Conn. 245, 765 A.2d 505 (2001), instructive on this issue. In *Gazo*, the plaintiff framed his complaint in breach of contract, but our Supreme Court found that the nature of the allegations and relief sought sounded in tort. Id., 265–66. The court held that "[a]lthough contract damages ordinarily consist of consequential losses . . . they ordinarily do not encompass such losses as pain and suffering. It is clear, therefore, that although the plaintiff has cast this claim in contractual language, in essence he seeks a tort recovery." (Citations omitted.) Id.

In the present case, the plaintiff has not sought economic damages, as she sought in counts one, two and three, but rather requests noneconomic damages for "pain and suffering." As the allegations in the complaint regarding a breach of contract were inadequate to set forth the factual circumstances that would establish a breach, we find the plaintiff's request for relief to be most indicative of the nature of this count. The plaintiff sought damages for "pain and suffering," which is noneconomic in nature and normally associated with negligence claims. Consequently, we find that the cause of action in the plaintiff's fifth count is most closely reflective of tortious conduct arising out of the negligent performance or nonperformance of a contractual duty. As such, this count is subject to the three year limitation

set forth in § 52-584. Therefore, at the time the original complaint was filed, the claim set forth in the fifth count was untimely and cannot be saved by § 52-592.

## II

The plaintiff's next argument encompasses the allegations set forth in counts six and seven of her complaint, which pertain to the stipulated judgment that arose out of a settlement agreement between the parties. The stipulated judgment provided that "upon payment by [the plaintiff] to [Shawmut] on or before March 1, 1994 of $350,000," Shawmut would quitclaim lots one, three and four to the plaintiff and provide her with a satisfaction of judgment. Before the stipulated judgment was rendered, the plaintiff had been required to withdraw the 1993 action. The plaintiff had intended to pay the $350,000 sum with the proceeds of her impending sale of the Homestead property to her tenant for $462,500. This sale did not occur by March 1, 1994, and the mortgagee refused the plaintiff's request to extend the deadline. The plaintiff does not set forth any recognizable cause of action in count six, but the parties have construed it as a revival of her constructive trust claim from the 1994 action, which was withdrawn due to the fact that its claims were realleged in her 1996 action. Count seven alleges civil conspiracy with intent to cause financial harm and requests compensation for pain and suffering. The plaintiff's claims center on her argument that the March 1, 1994 date was not a firm deadline because the stipulated judgment did not state that time was of the essence. We disagree.

"A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered

by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." (Citations omitted; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990).

"In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Alco Standard Corp.* v. *Charnas*, 56 Conn. App. 568, 571, 744 A.2d 924 (2000).

In the present case, the plaintiff argues that there is a question of material fact regarding what the parties intended by including the date of March 1, 1994, in the stipulated agreement. The plaintiff contends that the parties did not mean for this date to be a finite deadline. We cannot presume to know exactly what the parties intended by including the date of March 1, 1994, in the stipulated agreement. Fortunately, we need not make such a presumption because to do so is unnecessary where, as here, we are presented with definitive contract language setting forth a deadline of "on or before March 1, 1994 . . . ." There was no language in the stipulation concerning a reasonable extension that could have been granted after this date had passed.

In reaching this conclusion, we observe that "[a] consent judgment is a contract between the parties approved by the court, and its terms may not be

extended beyond the agreement entered into." *Owsiejko* v. *American Hardware Corp.*, 137 Conn. 185, 187–88, 75 A.2d 404 (1950). "It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake." *Bryan* v. *Reynolds*, 143 Conn. 456, 460–61, 123 A.2d 192 (1956). Here, the plaintiff is asking the court to alter the stipulation beyond the plain meaning of its terms, not to open the judgment due to fraud, accident or mistake.[5]

The plaintiff contends that the agreement's March 1, 1994 deadline was not rigid because the agreement did not state that time was of the essence. This court has held that "[w]hen the parties to a real estate contract want to fix a specific date for performance, [generally they are required] to express specifically in the contract that time is of the essence; otherwise, performance within a reasonable time will satisfy the contract." *Tulisano* v. *Schonberger*, 74 Conn. App. 101, 106, 810 A.2d 806 (2002). The stipulated judgment, however, was not a real estate contract. Although the plaintiff avers that Shawmut knew that the payment due on March 1, 1994, was to come from the proceeds of the plaintiff's impending sale of the property, the agreement between the parties was not itself a "real estate contract," and the terms were not contingent on the closing of the sale of her property. Therefore, the fact that the agreement did not state that time was of the essence

[5] Although the plaintiff stated in her complaint that she was "defrauded" of her equity by Shawmut, she never made a motion to open the stipulated judgment. Rather, she seeks this court to permit her to go to trial to challenge the interpretation of the terms of the stipulated judgment without first having made a motion to open the judgment. Because we are bound by the maxim that "[a] party seeking to open or set aside a judgment must do so by motion to the trial court"; *Woodside Village-Stratford Assn.* v. *Hertzmark*, 36 Conn. App. 73, 75, 647 A.2d 759 (1994); a claim alleging fraudulent conduct with respect to the stipulated judgment is not properly before this court.

did not justify the plaintiff's failure to meet the deadline set forth in the agreement. As the plaintiff did not meet this deadline, there is no question of material fact surrounding count six, which is predicated on a showing that Shawmut breached the settlement agreement by refusing to extend the deadline.

The plaintiff also cannot prevail on her civil conspiracy claim, comprising count seven of her complaint. Civil conspiracy requires the plaintiff to prove that two or more persons conspired "to do a criminal or an unlawful act or a lawful act by criminal or unlawful means . . . ." *Williams* v. *Maislen*, 116 Conn. 433, 437, 165 A. 455 (1933). We have already determined that Shawmut was under no duty to extend the plaintiff's deadline for payment under the stipulated judgment. Therefore, we conclude that the plaintiff is unable, as a matter of law, to prove that Shawmut committed a criminal or unlawful act. As there were no genuine issues of material fact to be decided, the court properly granted Fleet's motion for summary judgment on these two counts.

### III

The plaintiff's final claim on appeal pertains to count eight of her complaint, which was alleged solely against Wilshire Credit Corporation (Wilshire). Ocwen, the assignee and current holder of her residential mortgage, was substituted as a defendant. In this count, the plaintiff sought to consolidate the present action with the action brought by Wilshire's predecessor in interest to foreclose her residential mortgage, *Gateway* v. *Knudsen*,[6] and also claims that she was entitled to a setoff

---

[6] The plaintiff's 1997 complaint refers to the foreclosure action on the residential mortgage as "*Gateway (Shawmut)* v. *Knudsen*, CV 90-0299519S." The court's memorandum of decision cites this case as well. After reviewing the record, we have determined that Gateway Bank never held a mortgage on the plaintiff's residential property. The plaintiff notes in her appellate brief that "[t]he 1989 action is not a Gateway action . . . ." Therefore, we reference the proper case name, *Connecticut National Mortgage Co.* v. *Knudsen*, with respect to the plaintiff's claim regarding setoff.

in the foreclosure action. The plaintiff also sought compensation for "financial losses and emotional pain and suffering" resulting from the actions of "Shawmut Bank and [substituted] holders of the residential mortgage." The plaintiff argues that the court improperly granted Ocwen's motion for summary judgment on this count in finding that the plaintiff's right to setoff was derivative of her ability to prove successfully her claims against Fleet.[7]

Essentially, the plaintiff sought to consolidate a foreclosure action pending against her by Ocwen with this action, and then to set off the debt she owes to Ocwen by the amount of any recovery she may receive in her claim against Fleet. The plaintiff appears to argue that the "interdependency" of her commercial and residential mortgages requires the consolidation of these actions. We need not reach this conclusion, however, because even if the plaintiff could somehow sidestep the procedural problems created by attempting to consolidate two civil actions by way of a civil complaint, the plaintiff is clearly not entitled to a setoff in this action.

"A set-off is made where the defendant has a debt against the plaintiff . . . and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, and, as the case may be, to recover a judgment in his own favor for a balance." (Internal quotation marks omitted.) *225 Associates* v. *Connecticut Housing Finance Authority*,

---

[7] The court also held that Ocwen was not liable to the plaintiff for tortious conduct that was alleged against its predecessors in interest. The plaintiff has not clearly challenged this determination on appeal, and thus we do not review this portion of the court's holding. To the extent that the plaintiff in any way attempted to challenge this holding, we decline to review this issue, as it clearly was inadequately briefed. See *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989 ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly"), cert. denied, 244 Conn. 913, 713 A.2d 830 (1998).

65 Conn. App. 112, 122, 782 A.2d 189 (2001). A condition precedent to the application of the setoff statute, General Statutes § 52-139, is that the defendant's claim arises from a debt due from the plaintiff. *Elis* v. *Rogers*, 15 Conn. App. 362, 365, 544 A.2d 663 (1988). A setoff is used, therefore, to diminish the amount of damages paid to the plaintiff by the defendant by subtracting the amount that the plaintiff owes the defendant from the total award of damages. In the present case, the plaintiff has not proven that either Fleet or Ocwen were in any way indebted to her and, therefore, there is nothing available for her to set off her debt to Ocwen. As emphasized by the court, the plaintiff's complaint specified that she be entitled to setoff in her foreclosure action "by virtue of the allegations in this complaint *as proven* . . . ." (Emphasis added). The plaintiff has not proven her allegations, and setoff is not warranted. Summary judgment was granted on this count properly.

We conclude that the legal conclusion reached by the court that the plaintiff presented no genuine issues of material fact was legally and logically correct and supported by the facts set forth in its memorandum of decision.

The judgment is affirmed.

In this opinion the other judges concurred.

